IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Connie S. Gillen, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | Case No. 14 CV 50102 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| Carolyn W. Colvin, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
|    *Defendant*. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Connie S. Gillen, brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision denying her social security disability benefits. For the reasons set forth below, the decision is remanded.

### I. BACKGROUND[1]

On April 25, 2011, Plaintiff filed an application for disability insurance and supplemental security income benefits, alleging a disability beginning on January 1, 2004. R. 134, 138. Plaintiff asserted that she stopped working in 2009 because her foot and back pain along with her stress and anxiety limited her ability to work. R. 171-72. On February 21, 2013, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Plaintiff's request for benefits. R. 4-42. Plaintiff was represented by her attorney's paralegal at the

---

[1] The following facts are only an overview of the medical evidence provided in the administrative record.

1

hearing. Plaintiff, medical expert Dr. Mark Oberlander and vocational expert Thomas Dunleavy ("VE") testified at the hearing.

At the hearing, Plaintiff testified that she was 53 years old and lived by herself. R. 10. She owned two houses and rented one, but both houses were in foreclosure. R. 26. She was divorced and had two children that were 30 and 16 years of age. R. 10. Her 16-year-old son lived with his father, but stayed with Plaintiff most weekends. R. 10-11. Plaintiff testified that she graduated high school and took some college courses. R. 12. She did not have a driver's license because it was revoked in 2005 after her fourth conviction for driving under the influence. R. 13-14. Plaintiff's mother lived approximately two miles away and drove Plaintiff to the grocery store and to doctor appointments when needed. R. 14. In December 2013, her 73-year old mother had knee replacement surgery. R. 15-16. Since the surgery, Plaintiff's mother would bring Plaintiff over to her house twice a week so she could help with dishes, crafts and laundry. R. 15-16. However, for the week before the hearing, Plaintiff had been to her mother's house every day. R. 16.

Plaintiff testified that she last worked in 2010 performing quality control at an egg factory. R. 16-17. She sometimes worked 14 or 16 hour days and lifted between 50 and 70 pounds. R. 16-17. Plaintiff was eventually fired because she was not fast enough and would miss work because of pain in her back and feet. R. 17-18. Plaintiff was on unemployment for approximately two years, and although she applied for numerous jobs she did not get any offers because she could not stand on her feet for eight hours. R. 18-19.

Plaintiff testified that she had sharp pain in her back every day, and noted that a magnetic resonance imaging ("MRI") of her lumbar spine revealed two deteriorating discs and one torn disk. R. 19-20, 579 (MRI from 2/6/2013). However, her doctor did not recommend any treatment. R. 19. To relieve her pain, Plaintiff would sit in her recliner and elevate her feet. R. 20-21. Plaintiff also had foot pain if she stood for more than 30 minutes. R. 21.

Plaintiff testified that each week she usually went three or four nights without any sleep. R. 22. Her sleep medication did not help. R. 22-23, 25. Plaintiff was also taking medication for her depression and anxiety and was seeing her psychiatrist every six weeks. R. 25. Plaintiff testified that she had not had alcohol since approximately February 2012. R. 23. When she was drinking, she had approximately six beers a week, but noted that when she went through her divorce in 2000, she was drinking six to nine beers a day. R. 24.

The VE testified that Plaintiff's past work included several unskilled jobs at all exertion levels. R. 37. The ALJ provided the VE with a hypothetical claimant with Plaintiff's age, education and work experience who was limited to no more than use of occasional ramps, stairs or scaffolds, no more than occasional far acuity, must avoid concentrated exposure to hazards, was limited to simple, routine, repetitive tasks in an environment free of fast-paced production requirements, and with few changes in the work setting. R. 38. The VE testified that if this hypothetical claimant had no exertional restrictions, she could perform Plaintiff's past work as an egg inspector (unskilled work performed at a heavy exertion level,

3

DOT 920.687-134) and packager (unskilled work with medium exertion, DOT 920.587-018). R. 38. At the medium exertion level, the claimant could still perform work as a packager and an egg inspector, but as listed in the DOT, not as performed. R. 39. A claimant with the same restrictions limited to light exertion could not perform Plaintiff's past work, but could perform jobs as a cafeteria attendant (DOT 311.677-010), housekeeper (DOT 323.687-014), or laundry folder (DOT 361.687-014). R. 39. However, the VE testified that if the claimant missed three or more days a month or could not stand for more than 30 minutes at a time, she would be precluded from working in these positions. R. 39-40.

On March 22, 2013, the ALJ issued her ruling finding that Plaintiff was not disabled. R. 50-62. The ALJ found that Plaintiff had the following severe impairments: myopia, arthralgia, alcohol dependence, depression and anxiety. R. 52. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria for a listing impairment. R. 53. The ALJ concluded that Plaintiff could not perform her past relevant work, but she had the Residual Functional Capacity ("RFC") to perform other light work with the following limitations: simple, routine, repetitive tasks free of fast-paced production requirements, occasional use of ladders, ramps, or stairs, occasional activities requiring far acuity, no concentrated exposure to hazards, and few if any changes in the work setting. R. 60.

4

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Additionally, as the Seventh Circuit has repeatedly held, the federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist.

LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014) ("In the Seventh Circuit, an ALJ's decision can be supported by substantial evidence – or even a preponderance of the evidence, as it is here – but still will be overturned if the ALJ fails to build a 'logical bridge' from the evidence to her conclusion." (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996))); *Jensen v. Colvin*, No. 10 CV 50312, 2013 U.S. Dist. LEXIS 135452, at *33-34 (N.D. Ill. Sept. 23, 2013).

### III. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed or remanded because the ALJ failed to properly: (1) determine Plaintiff's RFC; and (2) evaluate Plaintiff's credibility.

**A. RFC**

Plaintiff contends that the ALJ's decision should be reversed or remanded because the RFC determination: (1) was based on the ALJ's lay opinion of the medical evidence; and (2) the ALJ failed to account for all of Plaintiff's symptoms. Plaintiff only takes issue with the ALJ's RFC determination as it relates to her physical impairments. Accordingly, the Court will limit its analysis to these issues.

Plaintiff's main challenge to the ALJ's RFC determination is that the ALJ did not address Plaintiff's complaints of foot pain and the fact that she could not stand for more than 30 minutes at a time. Specifically, Plaintiff contends that when the ALJ rejected the only two medical opinions relating to Plaintiff's foot pain, it left an evidentiary deficit that the ALJ filled with her lay opinion. The Court agrees that

6

the ALJ's RFC determination is not supported by substantial evidence. Remand is necessary for further clarification regarding Plaintiff's foot impairment and pain.

The ALJ determined that Plaintiff could perform light work with several limitations, including occasional use of ladders, ramps, or stairs, occasional activities requiring far acuity, and no concentrated exposure to hazards due to decreased vision. R. 60. Light work often involves "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). "[L]ight work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10. However, at the hearing, the VE testified that if the claimant could not stand for more than 30 minutes at a time, she would be precluded from working in the light exertion jobs identified.

Despite the VE's testimony and Plaintiff's numerous complaints of foot pain in her medical records and at the hearing, the ALJ never directly addressed what impact her pain had on her ability to stand during a typical work day. Social Security Regulation 96-8p requires the ALJ's "RFC assessment to include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts … and nonmedical evidence." Additionally, the ALJ was required to consider the combined effect of all of Plaintiff's impairments when determining her RFC to do light work. *See* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); *Denton v.*

7

*Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (stating that the failure to consider the full impact of a claimant's severe and non-severe impairments requires reversal). Notably, the ALJ found arthralgia to be a severe impairment, but determined Plaintiff did not meet Listing 1.02 for major dysfunction of joints. R. 52-53; 20 C.F.R. § 404, Subpt. P, App. 1, § 1.02. Thus, it is unclear why the ALJ failed to address whether Plaintiff's foot pain affected her ability to perform light work.

Furthermore, the ALJ did not explain why she found Plaintiff's complaints of foot pain not credible, and thus, her failure to mention such pain in Plaintiff's RFC leaves this Court with more questions than answers. The ALJ's RFC analysis consisted of a four-page chronological recitation of the medical evidence, with two additional pages of sparse analysis and little indication of how the evidence in the record shaped her RFC determination. R. 54-60. In the limited analysis provided, the ALJ determined that Plaintiff's allegations of foot pain and swelling, back pain, stress and anxiety issues were credible to the extent an impairment existed, but not as to severity or limitation on function. R. 55. However, the basis of the ALJ's finding on the latter is not clear.

The ALJ determined that Plaintiff's daily activities were not limited to the extent one would expect with such complaints of disabling symptoms. R. 55. The ALJ noted that Plaintiff testified that she lived alone, took care of her mother's house daily, and her son visited on the weekends, but she did not explain how these activities were inconsistent with Plaintiff's allegations, particularly her foot pain. R. 55. Plaintiff specifically testified that after standing for 30 minutes she would sit

8

down to relieve her pain. R. 20-21. There was no indication that Plaintiff would not take similar breaks to relieve her pain when performing the daily activities referenced by the ALJ.

The ALJ also referenced Plaintiff's reported activities from May 2011, when she stated she lived with her son, prepared meals, did her laundry, shopped with her mother and visited a neighbor a few times a week. R. 55. However, in the same report, Plaintiff also noted that she could only stand or walk for 30 minutes at a time and would take numerous breaks while cleaning her house. R. 180, 185. Despite this, the ALJ asserted that these activities indicated that Plaintiff was not as limited as she suggested. R. 55. Again, the ALJ made this assertion generally, and it is not clear from the record how the activities contradicted Plaintiff's complaints of foot pain.

The ALJ eventually addressed Plaintiff's foot and back pain specifically. R. 59. She found that Plaintiff's "reports of an inability to work, because of foot and back pain are not supported by the medical evidence of record." R. 59. In relation to foot pain, the ALJ commented that in September 2009, Plaintiff was fitted for custom molded orthotics due to bilateral peroneal tendonitis.[2] R. 59, 258. However, the ALJ made no assessment of the weight assigned to this diagnosis or the fact

---

[2] Plaintiff had swelling of the tendons on the outside of the ankle bones in both feet. *See* Peroneal Tendinosis, American Orthopaedic Foot & Ankle Society, http://www.aofas.org/footcaremd/conditions/ailments-of-the-ankle/Pages/Peroneal-Tendonitis.aspx (last visited Jan. 18, 2016).

9

that Plaintiff's podiatrist also diagnosed Plaintiff with enthesopathy[3] of the ankle and foot and determined that the orthotics would need to be used indefinitely due to Plaintiff's increased pain with ambulation. R. 257-58.

The ALJ also noted that "[s]ignificantly, the claimant's gait was normal [and] she was able to walk on her heels and toes" during her consultative examination in July 2011. R. 59, 377. Again, the ALJ failed to mention that the consultative examiner also found that Plaintiff had "[a]rthralgia involving both feet," and the examination revealed nothing about Plaintiff's ability to stand longer than 30 minutes.[4] R. 377-78.

The Commissioner argues that no physician limited Plaintiff's ability to stand for only 30 minutes at a time. Defendant's Memorandum at 6, Dkt. 16. However, on numerous occasions, Plaintiff complained of foot pain after standing for 30 minutes, and the ALJ has not explained why she discredited these allegations or how Plaintiff's allegations are inconsistent with other evidence in the record. *See also Villano*, 556 F.3d at 562 (stating that an ALJ may not discredit allegations of pain solely because there is no objective medical evidence to support it).

The ALJ also addressed, and discounted, the two other medical opinions addressing Plaintiff's foot pain, namely Plaintiff's treating physician, Dr. Martin Cleary, and the state agency consultant who provided a physical RFC. In September 2011, Dr. Cleary examined Plaintiff because she was complaining of pain

---

[3] Enthesopathy is a disease process occurring at the site of insertion of muscle tendons and ligaments into bones or joint capsules. STEDMAN'S MEDICAL DICTIONARY 649 (28th ed. 2006).

[4] "Arthralgia" is pain in a joint. STEDMAN'S MEDICAL DICTIONARY 159 (28th ed. 2006).

10

in her feet after standing for five or ten minutes. R. 423. Dr. Cleary's examination revealed marked tenderness of Plaintiff's metatarsal arch bilaterally, and he assessed Plaintiff as suffering from metatarsalgia.[5] R. 423. However, Dr. Cleary needed to get Plaintiff's record from her podiatrist before proceeding further. R. 423. In the meantime, Dr. Cleary told Plaintiff to take Aleve and stated that "[i]f [Plaintiff's] symptoms are correct and her physical findings certainly confirm this, I see no way that she is going to be able to work." R. 423.

The ALJ did not give "any weight" to Dr. Cleary's opinion that Plaintiff was unable to work because: (1) that decision was reserved for the Commissioner; and (2) the opinion was contradicted by his "cursory examination" of Plaintiff and the fact that he only recommended over the counter pain relievers. R. 59. On appeal, Plaintiff reiterates that she is not challenging the ALJ's reasons for rejecting Dr. Cleary's opinion. Plaintiff's Reply at 1-2 n.1, Dkt. 17. It is unclear why Plaintiff has forfeited this issue in light of the insufficient analysis under the regulations. *See Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (directing the ALJ to "explicitly" consider the checklist of factors and provide reasons for the weight given to the treating physicians' opinions on remand); *Duran v. Colvin*, 2015 U.S. Dist. LEXIS 101352, at *25 (N.D. Ill. Aug. 4, 2015) (suggesting that the language provided in § 404.1527(c) is mandatory). Nevertheless, the Court will address ALJ's analysis as it relates to the RFC determination.

---

[5] "Metatarsalgia" is pain in the forefoot in the region of the heads of the metatarsals. STEDMAN'S MEDICAL DICTIONARY 1195 (28th ed. 2006).

11

The ALJ correctly determined that she was not required to rely on Dr. Cleary's determination that Plaintiff could not work because such a determination is reserved to the Commissioner. R. 59; *see* 20 C.F.R.§ 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments … [or], your residual functional capacity …, *the final responsibility for deciding these issues is reserved to the Commissioner*.) (emphasis added). However, the ALJ does not clearly indicate whether she also assigned no weight to Dr. Cleary's assessment of metatarsalgia or just his opinion that Plaintiff could not work. All we know is that the ALJ discredited Dr. Cleary's opinion and ultimately determined Plaintiff could stand on her feet long enough to perform light work. The ALJ made this finding without the benefit of any follow up reports from Dr. Cleary to determine what his course of treatment was after he reviewed the records from Plaintiff's podiatrist. With this evidentiary deficit in the record, it seems odd that the ALJ failed to request supplemental records or at least question Plaintiff at the hearing about any follow-up care. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record."); *Young v. Barnhart*, 282 F. Supp. 2d 890, 896 (N.D. Ill. 2003) (finding that even though a claimant is represented by counsel at the hearing, the ALJ is still required to develop the record (citing *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000))).

The ALJ also discredited the only physical RFC provided in the record from the state agency consulting physician. The state agency consulting physician opined that Plaintiff had no exertional limitations, but she could only balance occasionally, was limited in far acuity and must avoid exposure to hazards because she had decreased vision. R. 399-402. The ALJ determined that she could not "accord much weight" to the state agency's assessment of Plaintiff's physical impairments because she was "more limited," noting that a substantial amount of evidence was submitted into the record following the agency's determination in August 2011. R. 60. The ALJ ultimately limited Plaintiff to light-exertion jobs and explained that she limited Plaintiff to light work with postural limitations due to Plaintiff's complaints of back pain and included visual restrictions due to decreased vision. R. 59-60.

The ALJ's assessment of the physical RFC presents two issues. First, the ALJ's statement that she did not "accord much weight" to the state's RFC is misleading because other than restricting Plaintiff to light-exertion jobs, the ALJ adopted the remainder of the state physician's RFC determination. *See* R. 400-02.

Second, the ALJ found Plaintiff "more limited" than the RFC provided, noting that substantial evidence was submitted following the agency's determination. Although this is true, the majority of the supplemental evidence, other than an MRI from February 2013, related to Plaintiff's mental impairments and treatment and not her ability to perform light work. *See* R. 555-79. By contrast, the ALJ gave "substantial weight" to the state agency consulting psychologist's assessment of

13

Plaintiff's mental impairments, which was also issued before the supplemental evidence was submitted. R. 60.

Plaintiff also contends that the physical RFC provided was not current because it was issued before Dr. Cleary's medical note from September 2, 2011. This is irrelevant because in October 2011, the state agency consulting physicians affirmed their prior decision and specifically stated that they gave Dr. Cleary's opinion "appropriate, but not controlling weight" because the opinion seemed "exaggerated beyond what would be expected by medical evidence who are specialist in the assessment of mental impairment." R. 428. The state agency physician seemed to be blurring the assessment Dr. Cleary made regarding foot pain and his comments about Plaintiff's psychiatric diagnoses (R. 423, 428); however, Plaintiff's complaint that the assessment is outdated is concerning because the ALJ did not issue her decision until over a year and a half later on March 2013.

It is true that an ALJ need not specifically address each symptom a claimant alleges, but here, Plaintiff's medical records document her numerous complaints of foot pain and the need for orthotics, and she testified that she was unable to work because she could not stand for more than 30 minutes. *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (stating that an ALJ need not discuss every piece of evidence presented, but must provide a logical bridge to connect the evidence to the ALJ's conclusions). This is particularly relevant when considered with the VE's testimony that Plaintiff would be precluded from the work identified at the hearing if she could not stand for longer than 30 minutes. In light of the evidence in the

14

record, it is ultimately unclear to this Court why the ALJ determined that Plaintiff could stand more than 30 minutes at a time to perform light work. The inadequacy of the ALJ's RFC determination is based on the combined effect of the errors addressed above, which necessitates remand for a more thorough explanation of her RFC determination. *See Rohan v. Chater*, 98 F.3d 966, 970-71 (finding that an ALJ must sufficiently articulate his assessment of the evidence to assure us that he considered significant evidence that would support the opposite conclusion and enable us to trace the path of his reasoning).

On remand, the ALJ should base her determination on specific evidence identified in the record, and she should also take this opportunity to clarify the effect, if any, Plaintiff's back pain had on her ability to stand more than 30 minutes. *See* SSR 96-8p. Depending on these findings, it may be useful for the ALJ to obtain an updated physical RFC and vocational expert testimony. Additionally, although the ALJ generally discredited Plaintiff's credibility regarding severity, the ALJ should make a specific determination regarding Plaintiff's claims of foot pain.

Plaintiff's remaining arguments regarding her shaking hands and myopia are less persuasive and would not require a remand on their own. The Court notes that Plaintiff never testified that she had difficulty with her hands shaking and evidence of this was only noted in Plaintiff's consultative examinations from 2006 and 2011. *See* R. 248 ("Her hands were shaking during the session. Her affect was anxious."), 377 (noting "tremors in outstretched hands," but Plaintiff's grip strength was normal and she was able to make a fist and pick up objects). However, the ALJ

15

should take the opportunity on remand to clarify the visual limitations imposed in the RFC, namely occasional far acuity in light of Plaintiff's myopia, with support from medical evidence instead of just implementing the restrictions issued by the state agency consulting physician without explanation.

**B. Credibility**

Plaintiff also contends that the ALJ failed to properly assess her credibility because she: (1) employed boilerplate language; and (2) relied too much on Plaintiff's reported daily activities.

The Court has already briefly touched on the ALJ's credibility determination in relation to the RFC. Because the Court remands for a more thorough RFC analysis, the ALJ must also ensure to properly address Plaintiff's credibility as it relates to her allegations of foot pain because the two are related. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano*, 556 F.3d at 562; *see also* 20 C.F.R. § 404.1529(c)(3)). In addition to fully considering the above factors, the ALJ should also specifically address why certain evidence in the record is or is not consistent with Plaintiff's alleged symptoms. *See Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (stating that an ALJ must explain the credibility determination by discussing specific reasons supported by the record).

However, the Court must note that Plaintiff's remaining claim of error regarding the ALJ's use of daily activities to discount her credibility is not as

problematic as she asserts. The ALJ may rely on Plaintiff's daily activities to discount her credibility, but must not use such activities to determine Plaintiff's ability to work. *See* 20 C.F.R. § 404.1529(c)(3) (allowing ALJs to consider daily activities when evaluating a claimant's symptoms); *Loveless v. Colvin*, __ F.3d __, 2016 U.S. App. LEXIS 541, at * 15 (7th Cir. Jan. 13, 2016). The ALJ correctly followed these regulations and only used Plaintiff's daily activities to determine her credibility, even if her analysis was quite limited. However, on remand, the ALJ should clarify why such activities discredit Plaintiff's alleged limitations.

## IV. CONCLUSION

For the reasons stated in this opinion, this Court finds that remand is warranted so that the ALJ may build a logical bridge between the evidence in the record and her ultimate conclusions. However, the Court expresses no opinion as to the ultimate determination of disability on remand. Accordingly, Plaintiff's motion for summary judgment (Dkt. 13) is granted, and the Commissioner's motion (Dkt. 16) is denied. The decision of the ALJ is remanded for further proceedings consistent with this opinion.

Date: January 20, 2016  By: _____
Iain D. Johnston
United States Magistrate Judge